UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

DOUGLAS A. DUHART

                     Plaintiff,

    -against-

CSX TRANSPORTATION, INC.,

                     Defendant.

**AFFIDAVIT**

**Civil Action No.: 07-CV-00169**

**GLS/DRH**

-------------------------------------------------------

STATE OF NEW YORK    )
                             ) ss.:

COUNTY OF ALBANY    )

      Scott A. Barbour, Esq., being duly sworn and deposes says:

      1.     I am a principal in the law firm of McNamee, Lochner, Titus & Williams, P.C., attorneys for the Defendant, CSX Transportation, Inc. ("Defendant") in the above captioned matter. I am admitted to practice law in the Courts of New York and in the United States District Court for the Northern District of New York. I am fully familiar with the facts and circumstances set forth herein.

      2.     I make this affidavit in support of the Defendant's motion pursuant to Rule 702 of the Federal Rules of Evidence for an order excluding the testimony, opinions/conclusions and report of Plaintiff's expert, John J. McCarthy, from the trial of this matter as: (1) he is not qualified to render an expert opinion in this matter and (2) his opinions are unreliable and fail to meet the standards for admissibility of expert testimony as set forth in <u>Daubert v. Merrill Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993). This affidavit is also made in support of Defendant's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, L.R. 7.3 and L.R. 56.1, for an order granting

summary judgment in favor of the Defendant dismissing the Plaintiff's Complaint and granting such other and further relief as the Court may deem just and proper.

3.     Plaintiff commenced this action on or about February 13, 2007, by the filing of Summons and Complaint with the Clerk of the Court.  A copy of Plaintiff's Complaint is annexed hereto as Exhibit A.

4.     Plaintiff's Complaint seeks monetary damages for injuries allegedly sustained as a result of the negligence of Defendant pursuant to the Federal Employer's Liability Act, 45 U.S.C. § 51, et. seq. (hereinafter "FELA").  (Exhibit A at ¶ 9).  Plaintiff alleges that he was injured on May 14, 2005, when he was replacing a lube oil cooler in one of the Defendant's locomotives while employed by the Defendant as a machinist in Selkirk, New York.  (Exhibit A at ¶17).

5.     Defendant filed its Answer to the Complaint on March 26, 2007 wherein it denied the allegations within the Complaint and asserted eight affirmative defenses.  A copy of Defendant's Answer is attached hereto as Exhibit B.

6.     During the course of discovery, Plaintiff gave deposition testimony on December 4, 2007.  A copy of Plaintiff's deposition transcript is annexed hereto as Exhibit C.

7.     Plaintiff testified that he had replaced/installed oil coolers more than ten times prior to doing so on May 14, 2005.  (See Exhibit C at p. 42).  Once inside of the locomotive and under the drive shaft, Plaintiff laid on his back so that he could access the oil cooler above him.  (Exhibit C pp. 55-56).  Plaintiff was then required to tighten four bolts to fasten the water pipe to a bracket on the oil cooler.  (Exhibit C at pp. 63-64).

{M0172890.1}
McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.   •   677 BROADWAY   •   P.O. BOX 459   •   ALBANY, NEW YORK 12201-0459

8.     It took Plaintiff "two plus hours" to complete his job inside of the locomotive. (Exhibit C at p. 64). Upon exiting the locomotive, Plaintiff used fellow employee, James Morris, as "leverage" to get out. (Exhibit C at pp. 67-68). Plaintiff testified that he did not have any difficulty getting out of the locomotive. (Exhibit C at p. 68).

9.     Plaintiff testified that he felt discomfort in his back when he stepped to the ground, prompting a comment to Morris that he "was not as young as he used to be." (Exhibit C at pp. 68-69). Plaintiff stated that he believes that his injury took place while inside the locomotive. (Exhibit C at p. 77).

10.    Plaintiff had completed his shift for the day and mentioned to his foreman while leaving that his back was "a little stiff." Plaintiff refused an offer to complete an accident report and refused an offer of medical attention. (Exhibit C at pp. 82-83).

11.    Plaintiff's Complaint alleges that Defendant was negligent in failing to "conduct an ergonomic risk assessment or other analysis of the specific task or tasks performed by the Plaintiff" and to "adequately instruct…for performing the specific tasks in an ergonomically proper fashion." (Exhibit A at ¶15). Plaintiff also alleges that the "Defendant required the Plaintiff to work in "ergonomically unstable environments". (Id. at ¶13).

12.    In support of his claims, Plaintiff has disclosed John J. McCarthy (hereinafter "McCarthy"), who Plaintiff identifies as a "Safety Expert", to testify as an expert witness at trial. (See Plaintiff's Expert Disclosures attached hereto as Exhibit D). McCarthy's report, a copy of which is attached hereto as Exhibit E, concludes that Plaintiff's "incident could have been prevented if the following steps had been taken":

3

    i.       Effective specific training on work operations to include confined spaces and <u>Ergonomic issues.</u>

    ii.      Address the fact that the locomotive is a confined space and have an effective retrieval system in place.

    iii.     Conduct an <u>ergonomic assessment</u> of the work operation. (<u>See</u> Exhibit E at p. 6) (emphasis added).

13.     On July 2, 2008, Defendant conducted a discovery deposition of McCarthy.  A copy of the transcript of McCarthy's deposition is annexed hereto as Exhibit F.

14.     During his deposition, McCarthy testified that he has never done any work for any railroad entity during his career in the safety field and admitted that this case was the first time that he had been consulted on a railroad related case.  (Exhibit F at pp. 14, 16).  McCarthy stated that he has never given a deposition or in court testimony involving a railroad related issue.  (Exhibit F at p. 7).  His business has also never had an interstate railroad as a client.  (Exhibit F at p. 12).

15.     McCarthy further stated that (1) he has never seen the locomotive (or one like it) in question, (2) did not conduct an on-site investigation and (3) conducted no measurements of the locomotive or tests regarding the Plaintiff's job functions at the time he was allegedly injured.  (Exhibit F at pp. 27, 30).  He also testified that he has never even "observed the process of changing a lube oil filter on a locomotive." (Exhibit F at p. 53).  Finally, he had no idea what type of locomotive was involved in this incident despite his assumption that there are different makes and models of locomotives (Exhibit F at p. 70).

16.     McCarthy never spoke with the Plaintiff during any part of the preparation of his report.  (Exhibit F at pp. 27, 36).

{M0172890.1}
McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.  •  677 BROADWAY  •  P.O. BOX 459  •  ALBANY, NEW YORK 12201-0459

17.     To reach his conclusions, McCarthy relied solely on the parties' discovery responses and initial disclosures. (Exhibit E at p. 1). Because he did not make any on-site inspections, McCarthy relied solely on the eleven (11) documents listed on page one of his report. (Exhibit F at p. 27). However, McCarthy testified that none of the drawings that he reviewed contained any measurements of the inside of the locomotive in question - the allegedly unsafe space in which the Plaintiff was working at the time he claims to have sustained his injury. (Exhibit F at pp. 29-30). Despite his lack of personal knowledge, McCarthy's report concluded that the locomotive area in question was a "confined space" as defined by OSHA regulations based solely upon a selected portion of Plaintiff's deposition. (Exhibit E at p. 3).

18.     During his deposition, McCarthy admitted that he had "very limited" knowledge in the field of ergonomics. (Exhibit F at pp. 32-33) (emphasis added). McCarthy provided the following testimony regarding his knowledge, skill and training in the field of ergonomics:

Q:  And what type of training have you received in the field of ergonomics?

A:  I have attended seminars given by - - by OSHA.

Q:  What was the nature of the seminars given by OSHA?

A:  It was just a very generic on how - - how they were going to try and implement in both general industry and the construction.

Q:  Have you ever done any research in the area of ergonomics or human factor issues?

A:  Yes, I have.

Q:  What type of research have you done?

A:  With tools.

Q:  What do you mean by tools?

A: Tools is very, very generic, but specifically it would be with hammers, drills, shovels, screwdrivers, miscellaneous tools.

Q: And what type of research or what type of work were you trying to do within the tool area?

A: I do a tremendous amount of work with tool suppliers, small tool suppliers, so we spent a lot of time with different suppliers and manufacturers.

Q: What's the purpose of your involvement in this – with the suppliers and the manufacturers? What are you looking for with them?

A: It was a joint effort to try and see if we could come up with different methods.

Q: Different methods for what?

A: For development of tools, both non-power and power.

(Exhibit F at pp. 33-34).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q: Other than your research with the tool suppliers and manufacturers, have you done any other research in the area of ergonomics?

A: No, I have not.

Q: When was that research done with the tool suppliers?

A: That was prior to me joining Pro Safety or starting Pro Safety. That was when I worked with - - with a company that's called Lovell Safety Management.

Q: I think you worked with Lovell from June of '92 to August of '98?

A: Correct.

Q: Have you authored any articles in the area of ergonomics or human factors?

A: No, I did not.

Q: Have you ever done any teaching in the area of ergonomics or human factors?

A: No, I have not.

(Exhibit F at pp. 34-35).

19.    McCarthy's *curriculum vitae* indicates that he has no formal degree in ergonomics. It also fails to identify any training, experience or education in the ergonomics field or with any railroad entity involving the use, operation, or repair of locomotives. A copy of his *curriculum vitae* is attached hereto as Exhibit G.

6

20.     McCarthy's report contradicts the Plaintiff's own account of how and where he was injured. McCarthy concludes within his report that "[i]f a tripod would have been used to pull Mr. Duhart out of the work area instead of Mr. Morris as leverage, there is a strong possibility Mr. Duhart might not have injured his back." (Exhibit E at p. 4) (emphasis added). As indicated above, the Plaintiff was clear that he did not sustain his injuries while getting out of the locomotive, rather, he sustained his injuries while working inside of the locomotive. (Exhibit C at p. 77) (emphasis added). Further, the opinion that Plaintiff "might not have injured his back" is insufficient as a matter of law to establish a *prima facie* case. McCarthy's opinion is wholly unsupported by the Plaintiff's testimony about the basic facts underlying the Plaintiff's purported cause of his injury. As a result, the inaccuracy and the insufficiency of his opinions make his report and testimony unreliable if not completely irrelevant to the claim herein.

21.     Based upon Rule 702 of the Federal Rules of Evidence and the cases set forth within the accompanying Memorandum of Law, it is respectfully submitted that McCarthy is not qualified to testify as an expert in this matter as he does not possess sufficient particularized knowledge and experience in the field of ergonomics and railroads that would allow him to render an opinion that Plaintiff's alleged injuries were caused by the negligence of the Defendant. Further, based upon the case law of Daubert v. Merrill Dow Pharmaceuticals and its progeny, McCarthy's opinions and report must be excluded from the jury as he has failed to conduct an adequate investigation as to the Plaintiff's work conditions and failed to adhere to a discernible methodology in reaching his conclusions, and thus, his opinions are unreliable, sheer speculation, and should not be heard by the jury.

7

## MOTION FOR SUMMARY JUDGMENT

22.    It is clear from the Plaintiff's Complaint that his theory of liability is premised on the allegation that Defendant was negligent in failing to conduct an ergonomic assessment and/or better train Plaintiff.  (See Exhibit A).  Assuming that the Court excludes the expert report and testimony of the Plaintiff's expert, John McCarthy, the Plaintiff cannot establish a *prima facie* case of negligence and summary judgment must be granted to the Defendant.

23.    Even assuming Defendant's motion to exclude McCarthy is unsuccessful, summary judgment must be granted as the McCarthy report fails to establish that any alleged act of negligence by Defendant caused Plaintiff's injury.  The McCarthy report fails to set forth any affirmative statement, to a reasonable degree of scientific certainty, that the Defendant's alleged negligence in failing to provide training and/or an ergonomic assessment caused Plaintiff's injury.

24.    The report also fails to state that an ergonomic assessment of the work area would have determined that the work area was ergonomically unsafe.    The McCarthy report takes no issue with the safety of the work area in which Plaintiff conducted his activities at the time of his alleged injury.  Therefore, Plaintiff cannot meet its burden of proof on the causation issue as McCarthy does not state that the work area was unsafe and, in addition, that this unsafe condition caused Plaintiff's injury.  As a result, summary judgment must be granted.

8

WHEREFORE, your deponent respectfully requests that this Court grant the motion of Defendant to exclude the testimony, opinions/conclusions, and report of John J. McCarthy from use at trial; and grant the Defendant's motion for summary judgment dismissing the Plaintiff's Complaint with prejudice, together with the costs and disbursements, and such other relief that this Court deems just and proper.

_____
SCOTT A. BARBOUR

Sworn to before me this
31st day of July, 2008

_____
Notary Public

JENNIFER M. VALENTI
Notary Public, State of New York
No. 01VA4884373
Qualified in Albany County
Commission Expires Feb. 8, 20 _10_

9