UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DOUGLAS A. DUHART,

**AFFIDAVIT**

Plaintiff,

-against-

CSX TRANSPORTATION, INC.,

Defendant.

---

STATE OF NEW YORK  )
          )ss.:
COUNTY OF ALBANY   )

   KEVIN P. HICKEY, ESQ., being duly sworn, deposes and says that:

   1.  I am an attorney at law licensed to practice in the courts of this State and in the United States District Court for the Northern District of New York. I am associated with the law firm of O'Connell and Aronowitz, P.C., attorneys for the Plaintiff, Douglas Duhart. As such I am fully familiar with all the prior pleadings and proceedings heretofore had herein.

   2.  I submit this Affidavit in opposition to Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1 and in further opposition to the Defendant's Motion to Preclude the testimony of John McCarthy.

   3.  The arguments in opposition to Defendant's Motion for Summary Judgment are contained in more detail in the accompanying Memorandum of Law in

1

Opposition to the Motion for Summary Judgment and Motion to Preclude the Plaintiff's Expert.

4.     This action was brought by Douglas Duhart, against his employer CSX Transportation, Inc. for injuries he alleges he sustained while working at CSX and performing the task of replacing the oil cooler on a locomotive.

5.     Generally, Defendant's Motion for Summary Judgment should be denied in its entirety as genuine issues of material fact exist as to whether CSX negligently subjected the Plaintiff to a known hazardous workspace and failed to properly train the Plaintiff as to how to work in said space or find an alternative plan for performing the required tasks associated with said space.

6.     More specifically, the Defendant's own "Safe Job Procedure" for the replacing the oil cooler describes one of the "specific hazards" of the tasks associated with performing this job as "awkward position[ing]." However, there is no specific evidence as to how CSX made any attempt to alleviate such hazards with regard to this specific Plaintiff, or any other employee, for that matter.

7.     In addition, the Plaintiff submitted the report and deposition testimony of John J. McCarthy, CSHM. Mr. McCarthy's *curriculum vitae* sets forth, in detail, over 25 years of providing safety services for clients in the construction, manufacturing, service and healthcare industries, as well as for public sector organizations. See, McCarthy c.v. and expert report.

8.     Through this experience, Mr. McCarthy has a broad range of experience that includes program development and implementation, identification of hazards and

potential hazards, control of hazards, accident investigation, loss control, site specific training, *OSHA consultations*, expert witness and training seminars. See, McCarthy c.v. and expert report.

9.    In addition, Mr. McCarthy served as the Senior Safety and Health Consultant and Corporate Safety Director/EEOC Officer for a major contracting firm in Yonkers, N.Y. He also worked for a major New York State worker's compensation safety management firm in New York City. In these roles, he was responsible for implementing and monitoring safety services for over 400 clients.

10.    Mr. McCarthy also has considerable experience providing clients with technical assistance, *OSHA training*, subcontractor safety, HazMat communications and field safety and site audits.

11.    In addition, Mr. McCarthy is a Certified Safety and Health Manager, a United States Department of Labor *OSHA Outreach Trainer*, and N.Y.S. Industrial Code Rule 59 Consultant.

12.    Therefore, Mr. McCarthy clearly has the experience to testify as to the matters contained in his report.

13.    Mr. McCarthy cites the OSHA Confined Space Standard, 29 CFR 1910.146, Subpart J, and OSHA Ergonomic Guidelines/Protocols as authority for some of his opinions.

14.    In this regard, Mr. McCarthy states:

"OSHA has promulgated a Confined Space Standard, 29 CFR 1910.146, Subpart J, Permit Required Confined Spaces, which states in the Scope and Application, that the standard contains requirements for practices and

procedures to protect employees in general industry from the hazards of entry into permit-required confined spaces.

"Confined space" means a space that:
      (1)    is large enough and so configured that an employee can bodily enter and perform assigned work; and
      (2)    Has limited or restricted means for entry or exit (for example: tanks, vessels, silos, storage bins, hoppers, vaults, and pits are spaces that may have limited means of entry);
      (3)    Is not designed for continuous employee occupancy.

"Permit-required confined space (permit space)" means a confined space that has one or more of the following characteristics;
      (1) Contains or has a potential to contain a hazardous atmosphere;
      (2) Contains a material that has the potential for engulfing an entrant;
      (3) Has an internal configuration such that an entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers to a smaller cross-section; or
      (4) Contains any other recognized serious safety or health hazard.

"Non-permit confined space" means a confined space that does not contain or, with respect to atmospheric hazards, have the potential to contain any hazard capable of causing death or serious physical harm.

15.    Based upon this section and schematics, documents, photographs and testimony of the witnesses, Mr. McCarthy says that this information clearly indicates that the space that Mr. Duhart was working in was a "confined space" that is not designed for continuous occupancy. See, McCarthy Report.

16.    Absent from this response is any particularity as to the training the Plaintiff received with regard to this project. That is, as the Defendant's own memo acknowledges that "awkward position[ing]" is a specific hazard associated with working on the oil cooler, the Defendant, as the moving party, should be required to provide more information as to the specific training the Plaintiff received to prevent such hazards.

17.     The fact that the Plaintiff either performed this job on 10 prior occasions or watched others perform this task in the past, does not, in any way, prove that the Plaintiff received specific training as to how to avoid the specific hazards of "awkward position[ing]".

18.     In fact, there is no evidence that the Plaintiff received any specific training as to the exact hazard of "awkward position[ing]" that one would be subjected to while working on the oil cooler.

19.     Indeed, there is no evidence that the Plaintiff was ever provided with a copy of this "Safe Job Procedure", or was in any way advised of said procedure. Further, there is no evidence that CSX undertook any acts to prevent the hazards associated with the same.

20.     Mr. McCarthy also states that the "Safe Job Procedure" does not clearly define how the employee will enter and exit the area, and if a tripod would have been used to pull Mr. Duhart out of the work area instead of Mr. Morris as leverage, there is a strong possibility Mr. Duhart might not have injured his back.

21.     Mr. McCarthy further opines that OSHA protocol for developing industry and task specific ergonomic guidelines is set to address a particular industry or task. Therefore, it is important to put into place the following guidelines:

> (1)     Management involvement in addressing ergonomic hazards,
> (2)     Worksite analysis recommendations for worksite/workstation analysis techniques geared to the specific operations that are present, and
> (3)     Hazard control recommendations that contain descriptions of specific jobs and that detail the hazards associated with

the operation, possible approaches to controlling the hazards and the effectiveness of each control approach.

22.     Mr. McCarthy further states that the information reviewed indicates a need for a more detailed ergonomic assessment. It is evident that CSX Transportation and its employees had discussions to address this, but they did not develop a proactive plan that would have addressed the use of tools, and different access and egress to the locomotive.

23.     Therefore, Mr. McCarthy opines that tis incident could have been prevented if the following steps had been taken:

1.     Effective specific training on work operations to include confined spaces and ergonomic issues.
2.     Address the fact that the locomotive is a confined space and have an effective retrieval system in place.
3.     Conduct an ergonomic assessment of the work operation.

24.     Therefore, Defendant's motion should be denied because issues of fact exist with regard to CSX's knowledge of the hazards associated with replacing an oil cooler. Simply put, CSX either never made a proper evaluation of the task, or after evaluating the task, failed to take any precautionary steps to ensure that the "awkward position[ing]" associated with the task did not cause any injuries to its employees.

25.     Moreover, there is no evidence that CSX ever trained its employees as to how to properly perform the task without sustaining an injury.

26.     Therefore, an issue of fact also exists warranting denial of the Defendant's Summary Judgment motion.

27. In addition, through the exhibits, the deposition testimony of John McCarthy, his *curriculum vitae* and report, the testimony of other witnesses, and the argument contained in the Plaintiff's Memorandum of Law, the Plaintiff has shown that the opinions expressed by Mr. McCarthy should be admissible as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Therefore, Mr. McCarthy should be allowed to testify as to his opinions at trial.

28. Annexed hereto are the following exhibits referred to in Plaintiff's Response to Defendant's Statement of Material Facts and in Plaintiff's Statement of Material Facts submitted in opposition to Defendant's motion for summary judgment. Plaintiff relies on the aforementioned Statements as well as the Exhibits in support of her opposition to Defendant's motion.

29. Attached hereto as **Exhibit "1"** are true and correct copies of the Plaintiff's Rule 26 (a)(1) disclosure which contains, *inter alia*, a transcript of CSX's Investigation of the circumstances surrounding the Plaintiff's injury.

30. Attached hereto as **Exhibit "2"** are true and correct copies of the Defendant's Response to Plaintiff's Interrogatories.

31. Attached hereto as **Exhibit "3"** are true and correct copies of pictures and schematic drawings of the subject locomotive.

32. Attached hereto as **Exhibit "4"** are true and correct copies of CSX's "Safe Job Procedure".

33.     All other references to Exhibits are the documents already attached to and submitted with the Defendant's Motion for Summary Judgment.  For the purposes of judicial economy, the Plaintiff is not re-attaching these documents.

WHEREFORE, the Plaintiff respectfully requests that the Defendant's motion for summary judgment and motion to preclude the testimony of John McCarthy, be denied in its entirety.

O'CONNELL AND ARONOWITZ
By:

Kevin P. Mckey, Esq.
Bar Roll No. 509796
Attorneys for Plaintiff
54 State Street
Albany NY 12207-1885
(518) 462-5601

Sworn to before me this
29th day of August, 2008

Notary Public, State of New York

TRACY A. MABB
Notary Public, State of New York
No. 01MA4951078
Qualified in Columbia County
Commission Expires May 15, 20 /1